# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO: 3:03CV539

| | |
|---|---|
| ARLEEN BROOKS, )<br>    Plaintiff )<br>)<br>vs. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>    Defendant. )<br>) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion for Summary Judgment" and "Plaintiff's Brief Supporting Motion ..." (Document No. 11), filed August 23, 2004 by Arleen Brooks, and the "Commissioner's Motion for Summary Judgment" (Document No. 12) and corresponding "Memorandum in Support of the Commissioner's Decision" (Document No. 13), both filed September 23, 2004. The parties have consented to magistrate jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds the Commissioner's decision to deny Ms. Brooks Social Security disability benefits is supported by substantial evidence. Accordingly, the undersigned will deny Ms. Brooks' Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and affirm the Commissioner's decision.

## I. PROCEDURAL HISTORY

Ms. Brooks has applied twice for supplemental security income. On September 4, 1997, Ms. Brooks filed her first application, alleging that she became disabled on October 2, 1995. (R. 83-84.)

Ms. Brooks' first claim was denied initially and again on reconsideration. A hearing on the first claim was held at Ms. Brooks' request on August 12, 1998, and a supplemental hearing was held on September 8, 1998. (R. 349-388.) On November 25, 1998, the Administrative Law Judge ("ALJ") issued an opinion denying Ms. Brooks' first claim. (R. 188-197.) On September 7, 2001, the Appeals Council denied Ms. Brooks' request for review, making the hearing decision the final decision of the Commissioner on Ms. Brooks' first claim. (R. 24-25.)

On February 19, 1999, Ms. Brooks again applied for supplemental security income, alleging that she became disabled on November 26, 1998, the day after the ALJ denied her first claim. (R. 220-221.) Ms. Brooks' second claim was denied initially and again on reconsideration. Ms. Brooks requested a hearing, which was held on December 7, 2001. (R. 31-66.) On December 17, 2001, the ALJ issued an opinion denying Ms. Brooks' second claim. (R. 16-22.) On September 23, 2003, the Appeals Council denied Ms. Brooks' request for review, making the hearing decision the final decision of the Commissioner. (R. 7-9.)

Ms. Brooks filed this action on November 14, 2003, challenging the decision in her second claim.[1] The parties' cross-motions for summary judgment are now ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1373(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

---

[1] The decision in Ms. Brooks' first claim is final and remains unaffected by the outcome of this case. Any discussion of the evidence from the first claim is intended only to show developments in Ms. Brooks' medical condition.

2

Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), the Fourth Circuit defined "substantial evidence" as "being more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Perales, 402 U.S. at 401).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-1057 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk on nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was whether Ms. Brooks is "disabled" as that term of art is defined for Social Security purposes.[2] The ALJ considered the evidence and concluded in his written

---

[2]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
>inability to engage in any substantial gainful activity by reason of any medically

3

opinion that Ms. Brooks has a seizure disorder, cognitive impairment, and depression, which are "severe" impairments within the regulatory meaning; that no impairment or combination of impairments meets or medically equals one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that Ms. Brooks is a "younger individual" with a high school education; and that Ms. Brooks retains the residual functional capacity to perform "unskilled" work that does not require driving or exposure to hazards. Accordingly, the ALJ concluded that Ms. Brooks was not under a disability as defined for Social Security purposes.

Ms. Brooks contends on appeal that the ALJ made three errors in his decision. First, Ms. Brooks contends that the ALJ failed to properly evaluate whether Ms. Brooks' cognitive impairment met the requirements of Listing 12.05C. Second, Ms. Brooks contends that the ALJ failed to properly evaluate Ms. Brooks' credibility. Specifically, she argues that the ALJ failed to consider evidence that resolved inconsistencies between Ms. Brooks' testimony about her seizure activity and the testimony of treating physicians. Third, Ms. Brooks contends that the ALJ failed to properly evaluate Ms. Brooks' mental residual functional capacity. Specifically, she contends that the ALJ erred (1) by failing to properly consider the opinions of the State agency psychological consultants and (2) by improperly assigning substantial weight to the mental residual functional capacity assessment from the decision made with respect to her first claim.

The undersigned concludes, however, that substantial evidence supports the ALJ's evaluation of Ms. Brooks' cognitive impairment, her credibility, and her mental residual functional capacity.

---

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....

Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

The undersigned further concludes that substantial evidence supports the ALJ's ultimate conclusion that Ms. Brooks was not disabled.

### A. Ms. Brooks' Cognitive Impairment

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled or not disabled. See 20 C.F.R. § 416.1520. At step three of that process, the ALJ is to determine whether the claimant suffers from an impairment or combination of impairments listed in or medically equal to any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (the "Listed Impairments"). If the claimant does suffer from an impairment or combination of impairments listed in or medically equal to any of the Listed Impairments, the sequential evaluation process ends and the claimant is found to be disabled.

The Listed Impairment for Mental Retardation is described at § 12.05 as follows:

> Mental retardation refers to significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. § 404, subpt. P, app. 1 § 12.05. The claimant may satisfy the severity requirement with evidence of "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional significant work-related limitation or function." 20 C.F.R. § 404, subpt. P, app. 1 § 12.05C.

On June 10, 1999, John K. Warnken, M.S., an Agency medical consultant, administered a Wechsler's Adult Intelligence Scale III examination to Ms. Brooks. Ms. Brooks obtained a full scale IQ score of sixty-nine, a verbal IQ score of seventy-three, and a performance IQ score of sixty-nine – placing her in the "intellectually deficient range of intelligence." Mr. Warnken observed, however, that

5

> Ms. Brooks does appear to be experiencing a significant decrease in full scale IQ score points from a premorbid level of functioning. Given her educational history, it appears that she most likely has functioned in the past with an IQ at least 15 to 20 points higher in the low average range of intelligence.

With respect to Ms. Brooks' educational history, Ms. Brooks testified in the hearing and reported to doctors that she graduated from Central Piedmont Community College with a degree in computer operations.

It is undisputed that Ms. Brooks' cognitive impairment constitutes "significantly subaverage intellectual functioning" under the requirements of § 12.05C. The issue is whether substantial evidence supports the ALJ's conclusion that "[Ms. Brooks] has not established deficits in adaptive functioning during the developmental period" and therefore does not meet the requirements of § 12.05. In support of this conclusion, the ALJ cited Ms. Brooks' educational history and Mr. Warnken's observation that Ms. Brooks likely had a higher IQ in the past.

Ms. Brooks contends, of course, that the ALJ's finding – that the deficits in Ms. Brooks' adaptive functioning were not initially manifested during the developmental period – is not supported by substantial evidence. In support of that contention, Ms. Brooks argues that the evidence of her educational history is unreliable. Specifically, Ms. Brooks contends that Lawrence Brooks – Ms. Brooks' father – was the only one to corroborate Ms. Brooks' claim that she received a degree and that there is some doubt about the credibility of Mr. Brooks' testimony; that Jeannetta Brooks-Stone – Ms. Brooks' sister – testified that Ms. Brooks did not receive a degree; that the degree Ms. Brooks supposedly received is not currently available at Central Piedmont Community College; and that the treating notes from Philip S. Lesser, M.D., a treating physician, cast doubt on Ms. Brooks' claim that she received a degree.

The record, however, does not support Ms. Brooks' contentions. First, the evidence that Mr. Brooks could not remember the exact year of Ms. Brooks' graduation and that he made the general statement that he tries to "speak in a way where [Ms. Brooks] would be more uplifted" does not at all establish that Mr. Brooks was untruthful in his testimony. Second, Ms. Brooks quoted only a portion of Ms. Brooks-Stone's testimony. Ms. Brooks omitted the testimony by Ms. Brooks-Stone that, as the oldest of eleven children, she did not remember Ms. Brooks receiving her degree but did not disagree with Ms. Brooks' claim that she graduated. Third, any evidence that Central Piedmont Community College does not currently offer a degree in computer operations does not show that the degree was not offered in 1990 when Ms. Brooks claims she graduated. Indeed, Ms. Brooks may have simply misstated the title of her degree, which does not prove that she is being untruthful when she says she graduated. Finally, Dr. Lesser's testimony is completely unrelated to Ms. Brooks' educational history and is cited out of context.

Ms. Brooks has consistently either testified herself or represented to her physicians or examining doctors that she received her degree. Even assuming, however, that Ms. Brooks is misrepresenting her educational history, there is evidence in the record to support the conclusion that Ms. Brooks experienced a decline in her cognitive ability after her developmental period. Specifically, Dorothy Siler – Ms. Brooks' sister – testified that she witnessed a decline in Ms. Brooks' ability to function when Ms. Siler lived with her sister for seven years beginning in 1988.[3] Ms. Siler testified further that her family saw Ms. Brooks decline "over the years" in her ability.

In summary, because Ms. Brooks has produced no specific evidence to show that she did not

---

[3] Ms. Brooks was born October 31, 1961. As such, when Ms. Siler lived with her sister, Ms. Brooks was beyond her developmental period.

graduate, and because Ms. Brooks' attempts to discredit her and Mr. Brooks' testimony are unpersuasive, the ALJ properly relied on Ms. Brooks' representations and Mr. Warnken's opinion. Accordingly, the undersigned concludes that the ALJ's conclusion that Ms. Brooks' cognitive impairment began after her developmental years is supported by substantial evidence.

### B. Ms. Brooks' Credibility

The determination of whether a person is disabled by non-exertional symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. § 416.929(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must evaluate "the intensity and persistence" of the alleged symptoms, and the extent to which those symptoms affect the claimant's ability to work. Id. at 595 (citing 20 C.F.R. § 426.929(c)(1)). The regulations provide that this evaluation must take into account:

> "all the available medical evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (citations omitted). Furthermore, any credibility finding by the ALJ "must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p.

With respect to Ms. Brooks' credibility, the ALJ concluded that "the testimony of the claimant and her sister as to the intensity, persistence, and limiting effects of her symptoms is not

8

persuasive because it is inconsistent with the statements which the claimant made to her physicians." The ALJ relied on the treating notes of Steven F. Karner, M.D., which indicated that Ms. Brooks had no seizure activity while under Dr. Karner's supervision, beginning on January 12, 1999. On June 22, 2000, Dr. Karner reported that Ms. Brooks "has had no seizures" since he simplified her regimen of medicines to Tegretol monotherapy, and Dr. Karner concluded that "[Ms. Brooks] is under good control at this time ... we can probably begin seeing her just about once a year."

Ms. Brooks contends, however, that other evidence in the record proves that Ms. Brooks misinformed her treating physicians and that she actually did experience seizure activity during the contested period. Specifically, Ms. Brooks argues that she could not report any seizure activity because she does not remember her seizures; that her family told Dr. Lesser that Ms. Brooks still has seizures; that Dr. Lesser concluded that Ms. Brooks "was capable of having ... seizures" and that he believed "the seizures are bona fide"; and that Ms. Siler testified at the hearing that Ms. Siler assumes that Ms. Brooks has seizures when "she just stares off and she comes back to us."

Ms. Brooks' contentions are insufficient to show that the ALJ's credibility conclusions were improper. Either Ms. Brooks or a member of her family was able to report her seizure activity before the alteration in her medication, despite the fact that Ms. Brooks could not remember the activity then either. As such, Ms. Brooks' argument that she is now misleading her doctor when she reports no seizure activity is unpersuasive. Furthermore, Ms. Brooks cites a letter dated August 12, 1998 by Dr. Lesser as support for the claim that Ms. Brooks' family told Dr. Lesser that she still has seizures. This letter also contains the statements by Dr. Lesser, mentioned above, that Ms. Brooks' seizures are "bona fide." Dr. Lesser's letter, however, predates the alteration in Ms. Brooks' medical regimen, and therefore its contents are not inconsistent with Dr. Karner's conclusion about the

9

stability of Ms. Brooks' seizure disorder.

In summary, Ms. Brooks has failed to discredit evidence that Ms. Brooks' seizure activity has stopped since the change in her medication in January 1999. As such, the ALJ properly relied on Dr. Karner's treating notes in drawing his conclusion on Ms. Brooks' and Ms. Siler's credibility. Accordingly, the undersigned concludes that the ALJ properly evaluated Ms. Brooks' and Ms. Siler's credibility.

### C. Mental Residual Functional Capacity

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] mental limitations and restrictions and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c). The residual functional capacity assessment is based on all the relevant evidence, including observations by treating or examining physicians. 20 C.F.R. § 404.1545(a).

Ms. Brooks contends on appeal that the ALJ made two errors in his mental residual functional capacity evaluation: (1) that the ALJ failed to properly consider the opinions of the Agency medical consultants and (2) that the ALJ improperly assigned substantial weight to the mental residual functional capacity determination from the decision made with respect to her first claim. The undersigned will address each of these contentions in turn.

### i. Agency Medical Consultants

As noted above, the residual functional capacity assessment is based on all the relevant

evidence. 20 C.F.R. § 404.1545(a). In determining Ms. Brooks' mental residual functional capacity, the ALJ relied on the findings of two Agency medical consultants. 20 C.F.R. § 404.1527(f)(2). The ALJ concluded,

> [T]he claimant's cognitive impairment and depression preclude complex tasks and the degree of concentration required of "skilled" tasks, but do not prevent her from performing the simple routine tasks involved in "unskilled" work.

The ALJ stated further that he gave "substantial weight to the findings of the State agency medical and psychological consultants."

On November 14, 1997, Jeffrey J. Wysocki, Ph.D, an Agency medical consultant, completed a Mental Residual Functional Capacity Assessment and determined that Ms. Brooks was moderately limited in a number of categories, including but not limited to her "ability to understand and remember detailed instructions" and her "ability to maintain attention and concentration for extended periods." Ultimately, Dr. Wysocki concluded that Ms. Brooks "is impaired mentally but is capable of performing simple, routine, repetitive tasks."

On June 30, 1999, Mark Congdon, M.D., another Agency medical consultant, completed a second mental residual functional capacity assessment and determined that Ms. Brooks was moderately limited in many of the same areas that Dr. Wysocki had previously recognized. Dr. Congdon concluded, however, that Ms. Brooks was "able to understand and follow simple directions" and also advised that Ms. Brooks was capable of performing simple, repetitive, routine tasks.

Ms. Brooks contends that the ALJ's mental residual functional capacity finding was flawed because he failed to include all of the moderate limitations listed by Dr. Congdon and Dr. Wysocki.

11

The undersigned respectfully disagrees. Although the ALJ did not include all of the Agency medical consultants' moderate limitations, the ultimate finding of the ALJ is entirely consistent with the conclusions of both Agency medical consultants. Accordingly, the undersigned concludes that the ALJ properly evaluated the opinions of the Agency medical consultants.

### ii. Previous ALJ Decision

In 2000, the Social Security Administration issued Acquiescence Ruling 00-1(4) to interpret the Fourth Circuit's decision in Lively v. Sec'y of Health and Human Servs., 820 F.2d 1391 (4th Cir. 1987). According to the Social Security Administration,

> When adjudicating a subsequent disability claim ... an adjudication determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances.

Soc. Sec. Adm., Acq. Ruling 00-1(4) (2000).

The factors used to determine the weight given to a prior finding are:

> (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Id. The Fourth Circuit explained in Albright v. Comm'r of the Soc. Sec. Admin, 174 F.3d 473 (4th Cir. 1999), that Lively, however, is "best understood as a practical application of the substantial evidence rule." Albright, 174 F.3d at 477.

In his decision, the ALJ stated,

12

> I have given substantial weight to the residual functional capacity established in the prior decision because the claimant alleged disability beginning the day after this decision .... The Claimant alleged disability based on the same conditions considered in the prior claim and the evidence and testimony show that the claimant's medical condition has not changed since the this [sic] decision was issued.

The previous ALJ found that Ms. Brooks "retained the residual functional capacity to perform simple, routine, repetitive, work as long as she avoided hazards and driving." As mentioned above, the ALJ in the present case concluded that the claimant's severe impairments "do not prevent her from performing the simple, routine tasks involved in 'unskilled' work."

Ms. Brooks contends that the ALJ should not have assigned the prior ALJ's finding substantial weight because of new evidence available since the first ALJ's decision. Specifically, Ms. Brooks argues that the consultative evaluation performed by Mr. Warnken on June 10, 1999 was new evidence that provided a basis for a different mental residual functional capacity finding.

In assigning the prior ALJ's finding substantial weight, the ALJ found it significant that the alleged disabilities were the same for both claims and that the alleged onset for the second claim was the day after the prior ALJ's decision. See Acq. Ruling 00-1(4) ("An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim."). Accordingly, the undersigned concludes that the ALJ did not improperly assign substantial weight to the previous ALJ's finding.

Even assuming the ALJ improperly assigned substantial weight to the previous mental residual functional capacity finding, the ultimate test is whether substantial evidence supports the ALJ's finding. See Albright, 174 F.3d at 477. In finding that Ms. Brooks was capable of performing simple, routine tasks associated with unskilled work, the ALJ relied on evidence that two Agency

13

medical consultants found that Ms. Brooks was capable of performing "simple, routine, repetitive tasks"; that Mr. Warnken found that Ms. Brooks could "follow simple directions"; and that Robert Skewer, M.D., a treating physician, recommended that Ms. Brooks "look into work opportunities" in November 1999. Furthermore, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, to "reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57. Based on the foregoing, the undersigned concludes that the ALJ's finding on Ms. Brooks' mental residual functional capacity was supported by substantial evidence.

## V. ORDER

Accordingly, **IT IS HEREBY ORDERED THAT** the "Plaintiff's Motion for Summary Judgment" (Document No. 11) is **DENIED**; the Commissioner's "Motion for Summary Judgment" (Document No. 12) is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

**Signed: July 20, 2005**

_____
David C. Keesler
United States Magistrate Judge